IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO.: 05-289 (RWR) |
| v. : | |
| KYRA TINEAL WALKER, : | FILED |
| Defendant. : | NOV 1 5 2005 |
| | NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and defendant Kyra Tineal Walker, with the concurrence of her attorney, Mary M. Petras, agree and stipulate as follows:

Defendant Walker is charged by Indictment with one count of Bribery, pursuant to 18 U.S.C. §§ 201(b)(2)(A) and (C), and 2.

At all times material herein, defendant Walker was employed as a Clerk with the District of Columbia Department of Motor Vehicles (hereinafter referred to as "DMV") at the main office at 301 C Street, N.W., in Washington, D.C. Among the official duties of defendant Walker was that of processing applications from individuals seeking to obtain District of Columbia motor vehicle titles and registrations.

Beginning in or about November 2002 through May 2004, Walker, while employed as a DMV clerk, accepted bribes in the form of cash payments to produce titles and registrations for certain motor vehicles and to assist others working at the DMV to do the same. Walker agreed to do this although she knew the vehicles were stolen, or did not have insurance, or had other problems associated with them. In some cases, Walker operated as a "runner" or "go-between,"

by accepting the cash payments and fraudulent documentation for vehicles that applicants wanted to register and delivering the payments and paperwork to another DMV employee so that DMV employee could enter the information from the paperwork into the DMV computer to create "clean" titles and registrations for the vehicles. Many of the titles were mailed to the applicants based on the address found on the application. Some of the same addresses were used on many different title applications. Walker took a portion of the money paid by the applicants for this service. Walker's share of the bribe money varied from $200 to $300 or more per transaction.

On other occasions, Walker accepted money and registered the vehicles herself. In some cases, the middlemen seeking to register the stolen vehicles would provide Walker with the information they wanted entered into the computer, including the vehicle identification number (VIN), the name of the individual to whom they wanted the vehicle registered and an accompanying Social Security number. In other cases, the middlemen would provide Walker with only a slip of paper with just the VIN, vehicle type, vehicle year and mileage written thereon, and she would take a name and social security number from a random citizen's application from an earlier transaction and use that information to complete the fraudulent title and registration. Walker told law enforcement that she utilized random citizens' identification information in this way on approximately ten occasions.

Walker also told law enforcement that the middlemen with whom she worked mostly dealt in expensive, newer model vehicles. For example, Walker stated that she could recall acting as a go-between for another DMV employee who issued titles and registrations for these middlemen on approximately five to ten Mercedes Benz automobiles. Walker stated that, on average, a middleman paid $1,000 per vehicle for title and registration; though Walker stated that

2

she would take $200 to $300 for each vehicle. Walker knew she was not entitled to receive or retain this money for her personal use, but did so nonetheless. She told law enforcement that she was involved in over 50 of these transactions.

Walker also admitted to "helping out" car dealers who did not want to take vehicles through inspections, which they knew they would not pass. Additionally, dealers brought her paperwork for salvaged vehicles, including from Maryland, in order to receive "clean" District of Columbia titles, that is, titles without reference to any problems with the vehicles. By obtaining a "clean" title, the dealers were able to sell the vehicles for more money. Typically, the dealers would provide Walker applications for the vehicles, but would not provide other necessary documentation, including proof of insurance. The dealers on occasion gave Ms. Walker money and other gifts. Although Walker recognized she was acting illegally on their behalf, she contends that she did not consider the money and gifts she received from these car dealers as a quid pro quo for the transactions she completed for them at the DMV.

> Respectfully submitted,
>
> KENNETH L. WAINSTEIN
> UNITED STATES ATTORNEY
> FOR THE DISTRICT OF COLUMBIA
> D.C. Bar No. 451058
>
> By: /s/ Robert Bowman
> ROBERT BOWMAN
> D.C. Bar No. 417176
> DANIEL P. BUTLER
> D.C. Bar No. 417718
> Assistant United States Attorneys
> 555 4th Street, N.W.
> Washington, D.C. 20530
> (202) 353-2877 and (202) 353-9431

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Fed. R. Crim. P. 11, after consulting with my attorney, Mary M. Petras, I agree and stipulate to this Statement of Offense.

Date: 11/15/05

Kyra T. Walker
Defendant

I have discussed this Statement of Offense with my client, Kyra T. Walker. I concur with her decision to stipulate to this Statement of Offense.

Date: 11-15-05

Mary M. Petras, Esquire
Attorney for Defendant Kyra Walker

4